# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TREASURY SECURITIES AUCTION ANTITRUST LITIGATION<br><br><br>This Document Relates To:<br><br>All Actions | 15 Md. 2673 (PGG) |

**MEMORANDUM IN SUPPORT OF MOTION TO APPOINT HAUSFELD LLP, KAPLAN FOX & KILSHEIMER LLP, AND SPECTOR ROSEMAN KODROFF & WILLIS, P.C. AS CO-LEAD COUNSEL FOR THE PLAINTIFF CLASS**

## TABLE OF CONTENTS

I.   Introduction..................................................................................................... 1

II.  The Firms Should Be Appointed Co-Lead Counsel. ...........................................2

    A.   The Firms Have Worked Diligently to Develop this Case....................................2

    B.   The Firms Have Vast Experience Successfully Prosecuting Antitrust Class
        Actions of  this Type and in this District.........................................................4

        1.   Hausfeld.............................................................................................4
        2.   Kaplan Fox ..........................................................................................7
        3.   SRKW.................................................................................................11

    C.   The Firms are Prepared and Able to Commit the Required Time and
        Resources to this Case.........................................................................14
    D.   The Firms Will Work Cooperatively with Co-Counsel and the Court Plaintiffs'.......14

III.  CONCLUSION....................................................................................15

## **TABLE OF AUTHORITIES**

### **Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06–MD–1775 (JG)(VVP),
2011 WL 2909162 (E.D.N.Y. July 15, 2011)………………………………………….. 10

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
Master File No. 06-MD-1775 (JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014),
*adopted in its entirety*, 2015 WL 5093503 (July 10, 2015),
amended August 3, 2015……………………………………………………………… …..10

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
Master File No. 06-MD-1775 (JG)(VVP), 2015 WL 5918273 (E.D.N.Y. Oct. 19, 2015),
*adopted in its entirety*, 2015 WL 5093503 (July 10, 2015),
amended August 3, 2015…………………………………………………………………10

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
06-md-1775-BMC-VPP (E.D.N.Y.)……………………………………………..5,8,9,15

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
No. 11-md-2221-NGG (RER) (E.D.N.Y.)......................................................................7

*In re Apple iPod iTunes Antitrust Litig.*,
No. 05-CV-0037 YGR (N.D. Cal.)................................................................................6

*In re Auto. Parts Antitrust Litig.*,
2:12-md-02311-MOB-MKM (E.D.Mi.)……...............................................................12

*In Re: Bank of America Corp. Sec. Derivative, and*
*Emp. Ret. Income Sec. Act (ERISA) Litig.*,
09 MD 2058 (PKC) (S.D.N.Y.)……………………………………………………...8

*In re Blood Reagents Antitrust Litig.*,
2:09-md-02081-JD (E.D. Pa.)………....................................................…………12

*In re Blood Reagents Antitrust Litig.*,
2:09-md-02081-JD, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015)....................................13

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
1:14-md-2508-HSM-WBC (E.D. Tenn.)……………………………………….....9

*In re: Dental Supplies Antitrust Litig.*,
No. 1:16-cv-00696-BMBC-GRB (E.D.N.Y.)...................................................................4

*In re: Disposable Contact Lens Antitrust Litig.,*
No. 3:15-md-2626-HES-JRK (M.D. Fla.)……………………………………………..2

*In re: Domestic Airline Travel Antitrust Litig.,*
1:15-mc-01404-CKK (D.D.C.)………………………………………………………4

*In re Domestic Drywall Antitrust Litig.,*
2:13-md-02437-MMB (E.D. Pa.)…………………………………………………....12

*In re Ductile Iron Pipe Fittings Antitrust Litig.*
3:12-cv-00169-AET-LHG (D.N.J.)…………………………………………….......9

*In re Flat Glass Antitrust Litig.,*
385 F.3d 350 (3d. Cir. 2004)…………...……………………….......................11

*In re Flat Glass Antitrust Litig.,*
MDL 1200, 2:97-mc-00550-DWA (W.D. Pa.)…..............................................11,12 15

*In re Foreign Exchange Benchmarks Antitrust Litig.,*
Case No. 1:13-cv-07789 (S.D.N.Y.)………………………………..…………….1,4

*In re High Fructose Corn Syrup Antitrust Litig.,*
295 F.3d 651 (7th Cir. 2002)………………………………………...………….....10

*In re High Fructose Corn Syrup Antitrust Litig.,*
MDL No. 1087, Master File No. 95-1477 (C.D. Ill.)…….....………...……………10

*In re High Pressure Laminates Antitrust Litig.,*
No. 7:00-md-01368-CLB (S.D.N.Y.)........................................................................6

*In re Keurig Green Mountain Single-Serve Antitrust Litig.,*
1:14-md-02542-VSB (S.D.N.Y.)...........................................................................9

*In re: LIBOR-Based Financial Instruments Antitrust Litig.,*
No. 11-md-2262 (NRB) (S.D.N.Y.).......................................................................5

*In re: LIBOR-Based Financial Instruments Antitrust Litig.,*
No. 11-md-2262, 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011).......................7

*In re Linerboard Antitrust Litig.,*
No. MDL 1261, Civ.A. 98–5055, Civ.A. 99–1000, Civ.A. 99–1341 (E.D. Pa.).............12

*In re Linerboard Antitrust Litig.,*
No. MDL 1261, Civ.A. 98–5055, Civ.A. 99–1000, Civ.A. 99–13412004,
WL 1221350 (E.D. Pa. June 2, 2004)……..………………………….…………….....13

*In re Lupron Marketing and Sales Practices Litig.,*
    345 F. Supp. 2d 135, 137-38 (D. Mass. 2004)……………………………………......14

*In re Mercedes-Benz Antitrust Litig.,*
    213 F.R.D 180, 185 (D.N.J. 2003)..................................................................................14

*In re: Municipal Derivatives Antitrust Litig.,*
    No. 08-cv-02516-VM-GWG (S.D.N.Y.)……………………………………….......5

*In re: National Football League "Sunday Ticket" Antitrust Litig.,*
    Case No. ML 15-02668-BRO (JEMx) (C.D.Cal.)…………………………….... 2

*In re Neurontin Antitrust Litig.,*
    MDL No. 1479, Master File No. 02-1390 (D.N.J.)……………………………………11

*In re New York City Shoes Inc. Securities Litig.,*
    No. 87-4677 (E.D. Pa.)...................................................................................................13

*In re OSB Antitrust Litig.,*
    Master File No. 06-CV-00826 (E.D. Pa.)....................................................................12,13

*In re Pharm. Industry Average Wholesale Price Litig.,*
    MDL No. 1456 (D. Mass.).............................................................................................12

*In re Relafen Antitrust Litig.*
    01-12239 (D. Mass.).....................................................................................................12,14

*In re: TriCor Antitrust Litig.,*
    Case 1:05-cv-00360-SLR (D.Del.)……………………………………………...12

*In re: Vitamins Antitrust Litig.,*
    Misc. No. 99-197 (TFH) (D.D.C.)……………………………………………........6

*In re Vitamin C Antitrust Litig.,*
    No. 1:06-md-01738-BMC-JO (E.D.N.Y.)…………………………………………5,6

*McDonough v. Toys "R" Us, Inc. et al.,*
    638 F.Supp.2d 461, 492 (E.D. Pa.)……………………………………………...12

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*
    *and McKesson Corp.,*
    Case#: 1:05-cv-11148-PBS (D. Mass)...........................................................................12

*O'Bannon v. Nat'l Collegiate Athletic Ass'n.,*
    No. 4:09-cv-03329-CW, ECF No. 387 at 11-13 (N.D. Cal. May 8, 2015)……………..6

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,*
    No. 03-4578 (E.D. Pa.)............................................................................................12,14

## **Rules**

Fed. R. Civ. P. 23(g) ............................................................................... 1,2,11,14

## I.    Introduction

Plaintiffs Oklahoma Firefighters Pension and Retirement System ("OKFPRS"), Oklahoma Police Pension and Retirement System ("OPPRS"), and Inter-Local Pension Fund Graphic Communications Conference of the International Brotherhood of Teamsters ("IPFGCC") (collectively, "Plaintiffs") respectfully move, pursuant to Fed. R. Civ. P. 23(g), for the appointment of Hausfeld LLP ("Hausfeld"), Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), and Spector Roseman Kodroff & Willis, P.C. ("SRKW") (collectively, "the Firms") as co-lead counsel in the above-captioned action.

Members of the Firms have worked together in complex multidistrict antitrust cases for over 20 years, leading other plaintiffs' counsel in a manner that has served class members and resulted in the recovery of billions of dollars.  This is a litigation involving more than 40 cases, more than 50 representative plaintiffs, and some two dozen defendants, concerning alleged collusion and manipulation in the markets for U.S. Treasury securities ("Treasuries").  In addition to the Firms' qualifications and experience, including specifically in financial services antitrust litigation as described herein and in their firm and individual resumes,[1] as well as their representations of substantial plaintiffs,[2] the Firms have uniquely demonstrated qualities critical to leadership of the pleading and prosecution of this matter.  Specifically, they have been a voice

---

[1] Copies of resumes and attorney biographies for each of the Firms are included as exhibits to the Declaration of Robert N. Kaplan in Support of Motion to Appoint Hausfeld LLP, Kaplan Fox & Kilsheimer LLP and Spector Roseman Kodroff and Willis, P.C. as Co-Lead Counsel for the Plaintiff Class ("Kaplan Decl."), submitted herewith.

[2] For example, OKFPRS was founded over 35 years ago, currently oversees over $3 billion in assets for its 21,743 participating members, and has been a lead plaintiff in numerous securities class actions and is currently serving as a class representative in *In re Foreign Exchange Benchmarks Antitrust Litig.*, Case No. 1:13-cv-07789 (S.D.N.Y.) ("*Foreign Exchange*").  OPPRS and IPFGCC similarly have lead plaintiff experience and billions of dollars in assets.

of reason in considering and conveying all worthwhile strategic input from different constituencies, as well as emphasizing cooperation in this matter[3]; are committed to appropriately robust examinations of the markets[4]; and will not overreach in pleading as to claims or parties to the detriment of the class.[5]

## II.    The Firms Should Be Appointed Co-Lead Counsel

Rule 23(g)(1)(A) provides that, "[i]n appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The Firms are exceptionally qualified under Rule 23(g) to lead this action.

### A.    The Firms Have Worked Diligently to Develop this Case

Each of the Firms has expended significant resources to investigate the Treasuries markets, understanding their operations and dynamics through consultations with clients and industry participants, the review of public information and data, and the use of experts. Further, the Firms are committed to a robust and fact-based consolidated amended pleading (or pleadings).

---

[3] *See* Section II.D., *infra*.

[4] *See* Section II.A., *infra*.

[5] *See, e.g., In re: Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), Dkt. 242, at 3 (Hausfeld attorneys elected not to pursue certain claims or name certain retailers as defendants, as they were "entitled, on behalf of the class, to choose the course that they believe will represent the class' best interests"); *In re: National Football League "Sunday Ticket" Antitrust Litig.*, Case No. ML 15-02668-BRO (JEMx) (C.D.Cal.), ECF Dkt. No. 65, at 2 (Hausfeld attorneys did not include various potential parties as defendants, finding it unclear "what role the four networks played in the restraint being alleged or how they should be held liable for the damages claimed as a result of DirecTV's exclusive deal with the NFL").

By way of example, prior to the filing of OKFPRS initial complaint (ECF No. 1, filed Aug. 17, 2015 in Case No. 1:15-cv-06474), and up to the present, Kaplan Fox has been consulting with an industry participant with over twenty years' experience in the Treasuries markets, whose insight has informed the scope and focus of the attorneys' investigation.  Additionally, Kaplan Fox retained a team of highly-qualified and experienced economic consultants who identified and purchased access to key sources of data on the Treasuries markets, and also tested those data sources to ensure that they were the best and most reliable inputs to properly assess the effect of defendants' alleged conspiracy on both the "when-issued" and secondary markets for Treasuries. Over many months, these consultants analyzed the trading and volume data, establishing a cogent and viable economic theory alongside the facts uncovered during the firm's continuing investigation – all leading to an amended complaint for OKFPRS, which was filed on August 10, 2016 (Dkt. 169) and added to the existing allegations numerous additional facts and economic analyses to demonstrate the mechanics of defendants' conspiracy and the economic impact the alleged cartel had on OKFPRS and similarly-situated entities that purchased U.S. Treasuries in either the "when-issued" or secondary markets.

The Firms are confident that, if appointed co-lead counsel, we will present plausible and well-founded claims based on high-level traders from primary dealers regularly communicating with each other prior to upcoming auctions and discussing demand for particular Treasuries, and their likely prices and yields at those auctions in order to depress auction prices.

**B.    The Firms Have Vast Experience Successfully Prosecuting Antitrust Class Actions of this Type and in this District**

**1.  Hausfeld**

Since its formation in 2008, Hausfeld has served in a leadership role in more than 30 antitrust class actions.[6]  The firm's stature has been recognized by publications such as *The New York Times*, *The Wall Street Journal*, and *U.S. News & World Report*.  Since the firm's inception, the Legal 500 has named Hausfeld as a top antitrust firm, writing in 2014 that "Hausfeld is a '*market transformer*', and the '*most innovative firm with respect to antitrust damages*.'"  The National Law Journal has repeatedly named the firm to its prestigious "Plaintiffs' Hot List," writing in 2014 that Hausfeld is among those "doing the most creative and substantial work on the plaintiffs side."  Hausfeld's partners, including those in New York in this litigation, have been highly ranked by Chambers USA, Chambers Global, and The Best Lawyers in America, among other accolades.  And the firm's prowess and scholarship are respected on both sides of the bar: Hausfeld is preeminent among plaintiffs' antitrust firms in programs and leadership of the ABA Section of Antitrust, including among its ranks a past Chair of the Section and a current member of that body's governing Council.

Of particular relevance to this case, Hausfeld has achieved extraordinary results for class members in enormously complex antitrust actions against financial institutions, particularly within this District.  In *Foreign Exchange*, Hausfeld, as co-lead counsel, has negotiated settlements to date of ***over $2 billion***.  For Hausfeld's work on that case, they received Global Competition Review's award for "Litigation of the Year – Cartel Prosecution" in April 2016.  In *In re: LIBOR-*

---

[6] Among Hausfeld's appointments are those in the past year as co-lead counsel in *In re: Domestic Airline Travel Antitrust Litig.*, 1:15-mc-01404-CKK (D.D.C.), and as co-lead counsel in *In re: Dental Supplies Antitrust Litig.*, No. 1:16-cv-00696-BMBC-GRB (E.D.N.Y.).

*Based Financial Instruments Antitrust Litigation*, No. 11-md-2262 (S.D.N.Y.) ("*LIBOR*"), Hausfeld and its co-lead counsel recently achieved an appellate victory against the world's largest banks on an important issue in antitrust law, in a decision in which the Second Circuit concluded that, among other things, a plaintiff alleging a *per se* antitrust violation need not separately plead harm to competition. In *LIBOR*, Hausfeld and its co-lead counsel have negotiated a $120 million resolution with the first settling defendant, who has also agreed to cooperate in litigation against the remaining defendants. Similarly, in the recently-concluded *In re: Municipal Derivatives Antitrust Litig.*, No. 08-cv-02516-VM-GWG (S.D.N.Y.), Hausfeld achieved total settlements of nearly $250 million on behalf of the class, from many financial institutions with affiliated primary dealer defendants in this case. In another major antitrust litigation, *In re: Air Cargo Shipping Servs Litig.*, No. 1:06-md-01775-BMC-VVP (E.D.N.Y.), alleging a conspiracy to fix the price of fuel surcharges globally, Hausfeld (along with Kaplan Fox as co-lead counsel) committed vast resources over a decade-long litigation to secure stellar results: 27 settlements totaling over $1.25 billion in cash recovery for the class. Here, too, Hausfeld is committed to devoting substantial resources to litigating this case for the benefit of the class.

Hausfeld has been lauded for its dedication and tenacity by courts around the country. Judge Brian Cogan of the Eastern District of New York praised Hausfeld and its co-lead counsel in *In re Vitamin C Antitrust Litig.*, No. 1:06-md-01738-BMC-JO (E.D.N.Y.) in which the firm attained a trial victory, as "highly experienced antitrust lawyers" and opined that "[a]s to the quality of the plaintiffs' representation, I really can't say enough. I just think the way this case was handled was as good as it gets...it would be a pleasure to have any of you in front of me again on any case...[t]he representation could not have been any better." In the Northern District of California, where Hausfeld achieved a landmark trial victory against the National Collegiate Athletic

Association, Judge Claudia Wilken praised Hausfeld for bringing an unprecedented case "against a supersized institution in the United States, the NCAA" without any preceding government action, found that Hausfeld achieved "an exemplary and surprising result given the challenges that they faced in the beginning of the case," and further described that successful litigation as "one, if not the most, significant antitrust cases in this era or very close to it… one that is going to change the face of a significant part of American culture and the American economy." *O'Bannon v. Nat'l Collegiate Athletic Ass'n,* No. 4:09-cv-03329-CW, ECF No. 387 at 11-13 (N.D. Cal. May 8, 2015) ("*O'Bannon*"). For work in that case, Hausfeld has received numerous awards and distinctions, including "Outstanding Antitrust Litigation Achievement in Private Law Practice" from the American Antitrust Institute in November 2015 and "Litigation of the Year – Non-Cartel Prosecution" from the Global Competition Review in April 2015.

The *Vitamin C* and *O'Bannon* cases also reflect Hausfeld's special distinction among plaintiffs' antitrust firms of having taken complex antitrust litigation all the way through trial.[7] In *O'Bannon*, one of a handful of successful Rule of Reason trials in the 21st century, Hausfeld led a three-week bench trial against the NCAA, culminating in a finding of antitrust liability and permanent injunctive relief forcing the NCAA to finally share a portion of its massive revenues with college athletes. That relief was in addition to a $42 million cash settlement with the NCAA's co-defendants. In *Vitamin C*, after a three-week jury trial, Hausfeld achieved a complete trial victory and a trebled verdict of $162 million against Chinese pharmaceutical companies who had fixed the prices and controlled exports of Vitamin C, in addition to $32 million in settlements.

---

[7] Indeed, of the nine antitrust class actions brought to trial in federal court in the last decade, Hausfeld attorneys have participated in five of them: *In re: Vitamins Antitrust Litig.*, Misc. No. 99-197 (TFH) (D.D.C.) in 2003; *In re High Pressure Laminates Antitrust Litig.*, No. 7:00-md-01368-CLB (S.D.N.Y.) in 2006; *Vitamin C* in 2013; *O'Bannon* in 2014; and *In re Apple iPod iTunes Antitrust Litig.*, No. 05-CV-0037 YGR (N.D. Cal.) in 2014.

Hausfeld also is particularly known for working cooperatively and efficiently with co-counsel in complex class actions, even when faced with significant challenges. This reputation is exemplified by the fact that on October 29, 2015, the firm entered the long-running *In re American Express Anti-Steering Rules Antitrust Litig.*, No. 11-md-2221-NGG (RER) (E.D.N.Y.), for the purpose of taking over as new lead counsel, by appointment of Judge Nicholas G. Garaufis, who praised Hausfeld's chairman Michael Hausfeld, stating: "You are an extremely experienced antitrust litigator. I'm pleased that you are willing … to take this on."[8]

Moreover, Hausfeld has committed to this action a carefully assembled team led by the firm's chairman, Michael Hausfeld, and including Irving Scher and Scott Martin in New York (co-editors of the *Antitrust Adviser* treatise, and both well-respected from many years in the defense bar), Bonny Sweeney (well-known for her depth of knowledge of the financial services industries), and, given the anticipated data involved, nationally recognized e-discovery expert William Butterfield.[9]  With offices in London, Berlin and Brussels, Hausfeld also is well-positioned to manage any European discovery that might arise in this case. *See e.g. LIBOR*, 2011 WL 5980198, at *3 (considering the existence of Hausfeld's presence in the United Kingdom in appointing it as co-lead counsel).

### 2.  Kaplan Fox

With its principal office in New York City (within a short subway ride of this courthouse), its extensive experience for many years in prosecuting plaintiffs' antitrust cases, and its strong

---

[8] *See* Pete Brush, *Hausfeld Gets Keys to AmEx Swipe Mess for Settlement Push* (Oct. 29, 2015), http://www.law360.com/articles/720619/hausfeld-gets-keys-to-amex-swipe-mess-for-settlement-push.  In order not to unduly burden the Court with exhibits, various transcripts and articles cited herein are not included in the Kaplan Decl., but the Firms stand ready to provide them if the Court would prefer.

[9] For the Court's convenience, copies of only participating Hausfeld attorney biographies are included in Kaplan Decl. Ex. 1.

staff of antitrust attorneys with combined experience of more than 150 years, it is well qualified to represent the interests of the class as lead counsel.  A copy of the firm's resume is included in Kaplan Decl. Ex. 2.

Since 2006, Kaplan Fox has been involved as a co-lead counsel with Hausfeld – in a case, like the Treasuries litigation, with over 20 defendants – in *In re Air Cargo Shipping Servs. Antitrust Litig.*, 06-md-1775-BMC-VPP (E.D.N.Y.) ("*Air Cargo*"), pending before Judge John Gleeson (and now, following Judge Gleeson's recent retirement, before Judge Brian M. Cogan) and Magistrate Judge Viktor V. Pohorelsky.  In *Air Cargo*, with pretrial preparation in full gear, plaintiffs recently settled with the last defendants making the total settlements more than $1.25 billion.  In a ruling from the bench granting plaintiffs' six summary judgment motions to strike defendants' affirmative defenses (all argued by Kaplan Fox partner Robert N. Kaplan), and denying the remaining defendants' nine motions for summary judgment, Judge Gleeson commended plaintiffs' counsel, "for your advocacy both in writing and orally. You travel in different circles than the ones I travel in so you probably don't appreciate how unusual it is to have such excellent lawyering so I am grateful for it."  *See* Transcript of Aug. 31, 2015 Hearing on Summary Judgment, at 91.

Kaplan Fox was also a co-lead counsel in *In Re: Bank of America Corp. Sec. Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, 09 MD 2058 (PKC) (S.D.N.Y.), where the firm secured a landmark $2.43 billion settlement on the eve of trial.  Judge P. Kevin Castel recognized the efforts of plaintiffs' counsel: "When plaintiff's counsel takes on a case like this, they know that it is going to be a multi-year battle .... Plaintiff's counsel took on that risk .... In terms of the quality of representation, the results speak to the quality of the representation, the fourth largest securities

class action settlement ever.  And it qualifies as first in several respects." *See* Transcript of April 5, 2013 Fairness Hearing, at 59-60.

Kaplan Fox is regularly chosen by courts in this district (*e.g.*, *In re Keurig Green Mountain Single-Serve Antitrust Litig.*, 1:14-md-02542-VSB (S.D.N.Y.), *see* June 26, 2014 Order Appointing Liaison Counsel and Interim Class Counsel for the Proposed Classes of Indirect Purchaser Plaintiffs, ECF No. 36, in the Eastern District of New York (*e.g.*, *Air Cargo, see* Dec. 4, 2006 Practice and Procedure Order Number 2, ECF No. 232),  and across the nation[10] to act as lead or co-lead counsel in antitrust class actions, and is widely recognized for its effective handling of antitrust actions.

In addition, Kaplan Fox lawyers routinely receive accolades for their antitrust experience from their peers in the plaintiffs and defense bars. In his 2004 book *Courting Justice*, David Boies summed up the firm's reputation by stating that "Bob Kaplan and his partner Greg Arenson were excellent lawyers with whom I had worked before."  More recently, Kaplan Fox partners Robert Kaplan and Gregory Arenson were listed by defense and corporate counsel as two of the top 75 plaintiffs' attorneys in the U.S. for all disciplines, one of the very few law firms with two attorneys listed (*see* http://lawprofessors.typepad.com/files/dc-188012-v2-trial_lawyer_kingpins1.xls). Mr. Arenson's economics background has provided a basis for his recognized expertise in handling economic issues in antitrust cases both at class certification and on the merits, and indeed has been asked in several cases in which Kaplan Fox has not been co-lead counsel to  handle economic issues and experts on class certification and the merits.

---

[10] Kaplan Fox has been appointed as co-lead counsel in *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.,* **1**:14-md-2508-HSM-WBC (E.D. Tenn.) (*see* May 20, 2014 Consolidation and Designation of Counsel Order (ECF No. 67)), and *In re Ductile Iron Pipe Fittings Antitrust Litig.* Case 3:12-cv-00169-AET-LHG (D.N.J.) (*see* May 15, 2012 Order (ECF No. 61)).

In 2013, Kaplan Fox was chosen by the *National Law Journal* for its "Litigation Boutique Hot List," *see* http://www.nationallawjournal.com/printerfriendly/id=1202587425322. The firm's significant antitrust class action achievements include the following four examples:

- *Air Cargo*:

  After 10 years of vigorous litigation, with a scheduled trial date, settlements against the last set of defendants were entered into and are pending approval before the Hon. Brian M. Cogan. Kaplan Fox and its co-counsel have achieved more than $1.25 billion in settlements.

  In two published orders, Judge Gleeson recognized the quality of the representation by plaintiffs' counsel, including Kaplan Fox, stating in 2015 that, "As noted in my previous decisions, class counsel are highly experienced practitioners in complex litigation generally and antitrust litigation specifically," *Air Cargo*, 2015 WL 5918273, at *6-7 (E.D.N.Y. Oct. 9, 2015), which echoed a 2011 opinion where he stated that, "Settlement Class Counsel are highly experienced practitioners in complex litigation generally and antitrust litigation specifically" – counsel's work has been "tireless." *Air Cargo*, 2011 WL 2909162, at *7 (E.D.N.Y. July 15, 2011).

  Magistrate Judge Pohorelsky's Report and Recommendation recommending class certification after a three-day evidentiary trial stated that, "Each counselor [Class Counsel] . . . ha[s] consistently proven their competence and expertise throughout the life of this extended litigation." *Air Cargo*, 2014 WL 7882100, at *34 (ECF No. 2055 at 58). Judge Cogan, who replaced Judge Gleeson on the *Air Cargo* case following Judge Gleeson's retirement from the bench, noted at a recent fairness hearing that: "I know the plaintiffs' counsel by experience. They are all top-end lawyers. Judge Gleeson has recognized that in approving the prior settlement[s]." Transcript of Mar. 24, 2016 Fairness Hearing, at 13:8-11.

- *In re High Fructose Corn Syrup Antitrust Litig.*, MDL No. 1087 (C.D. Ill.):

  Kaplan Fox was one of three co-lead counsel appointed to represent a class of direct purchasers alleging that the Archer Daniels Midland Company and a number of its competitors conspired to fix the price of high fructose corn syrup. After the district court granted summary judgment for the defendants, Kaplan Fox partner Gregory Arenson successfully argued the case before the U.S. Court of Appeals for the Seventh Circuit, with Judge Posner writing a seminal antitrust opinion reversing the trial court's decision. *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002). The case later settled shortly before trial, for $531 million. At a hearing at the end of the litigation, U.S. District Judge Michael H. Mihm thanked plaintiffs' counsel for the "high quality of [their] presentation . . . . and professionalism," and stated, in referring to plaintiffs' counsel, that, "you . . . are as good as it gets," and "You've always been cutting to the chase and not wasting my time or each other's time or adding

to the cost of the litigation." Transcript of Oct. 14, 2004 Hearing, at 45.

- *In re Flat Glass Antitrust Litig.*, MDL 1200 (W.D. Pa.):

   Kaplan Fox was one of four co-lead counsel in a case against the leading manufacturers of flat glass. Kaplan Fox partner Robert Kaplan successfully argued before the U.S. Court of Appeals for the Third Circuit, which issued a groundbreaking summary judgment opinion that is routinely cited in antitrust cases throughout the federal courts. *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d. Cir. 2004). *Flat Glass* settled on the eve of trial, for a total of $121 million for the class.

- *In re Neurontin Antitrust Litig.*, MDL No. 1479, Master File No. 02-1390 (D.N.J.):

   Kaplan Fox was one of two co-lead counsel in this hard-fought delayed-generic entry case against Pfizer and Warner-Lambert which lasted over twelve years and which settled in 2014 for $190 million shortly before trial. Kaplan Fox's work on this case, which resulted in numerous published decisions on a wide array of important issues in this particular type of antitrust litigation, was led by partner Richard Kilsheimer, who has extensive experience in antitrust cases.

### 3.  SRKW

SRKW meets all the relevant criteria considered by courts in appointing co-lead counsel, and it respectfully submits that its appointment here is warranted. SRKW's experience in serving as class counsel in numerous previous and currently pending cases, and managing the litigation efforts of many of the plaintiffs' counsel represented here, make the firm an ideal applicant to represent the interests of the class pursuant to Federal Rule of Civil Procedure 23(g)(1) and (2).

SRKW is a highly regarded and successful law firm with a nationwide practice that focuses on class actions and complex litigation, including antitrust, securities, and consumer protection claims. *See* SRKW Firm Biography (Kaplan Decl. Ex. 3). Currently, SRKW is serving as co-lead counsel in *In re Auto. Parts Antitrust Litig.*, 2:12-md-02311-MOB-MKM (E.D.Mi.),[11] co-lead

---

[11] Settlements, to date, have been achieved in several of the constituent cases within the *Automotive Parts* litigation, totaling more than $50 million.

counsel in *In re Domestic Drywall Antitrust Litig.*, 2:13-md-02437-MMB (E.D. Pa.),[12] sole lead

counsel in *In re Blood Reagents Antitrust Litig.*, MDL No. 2081, 2:09-md-02081-JD (E.D. Pa.),[13]

and co-lead counsel in *McDonough v. Toys "R" Us, Inc. et al.*, 638 F.Supp.2d 461, 492 (E.D. Pa.)

("BRU").[14]  SRKW attorneys have also served as lead or co-lead counsel in numerous other major

antitrust class actions, including *New England Carpenters Health Benefits Fund v. First Databank,*

*Inc. and McKesson Corp.*, Case#: 1:05-cv-11148-PBS (D. Mass) ($350 million recovery); *In re*

*Pharm. Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.) (more than $219

million recovery); *In re Linerboard Antitrust Litig.*, No. MDL 1261, Civ.A. 98–5055, Civ.A. 99–

1000, Civ.A. 99–1341 (E.D. Pa.) (more than $200 million recovery); *Stop & Shop Supermarket*

*Co. v. SmithKline Beecham Corp.*, No. 03-4578 (E.D. Pa.) ($150 million recovery); *In re OSB*

*Antitrust Litig.*, Master File No. 06-CV-00826 (E.D. Pa.) (recovery from nine defendants

exceeding $120 million); *In re Flat Glass Antitrust Litig.*, MDL No. 1200 (W.D. Pa.) ($120 million

recovery); *In re Relafen Antitrust Litig.*, 01-12239 (D. Mass.) ($75 million recovery); and *In re*

*TriCor Antitrust Litig.*, Case 1:05-cv-00360-SLR (D. Del.) ($65.7 million recovery for a class of

consumers and third-party payors).

 As these many notable successes demonstrate, SRKW has a history of litigating complex

cases efficiently and effectively.  For instance, SRKW is co-lead counsel in the *Automotive Parts*

MDL.  That litigation, described as one of the largest antitrust cases ever litigated, relates to more

---

[12] Settlements, to date, have been reached with three of seven defendants in *Drywall*, totaling more than $67 million.

[13] To date, plaintiffs have settled with one of the two defendants in *Blood Reagents*, recovering $22 million on behalf of the class.

[14] The decision to certify the class in BRU, as defendants stated in their petition to appeal under Rule 23(f) (which was denied), was unprecedented, and the case has resulted in settlements of $35.5 million.

than twenty individual automotive parts, and comprises four separate plaintiff groups, over fifty defendants, and over twenty direct plaintiff counsel working with SRKW.  SRKW has managed the case and to date has obtained more than $50 million in settlements for the class.  Similarly, SRKW filed and successfully prosecuted the *OSB* action, which SRKW investigated and developed without the benefit of any government investigation.  In that case, SRKW developed and led an efficient organization of over 30 experienced and capable plaintiffs' firms against nine, billion-dollar defendants.  As noted, this resulted in $120 million in settlements for the class.  Finally, in the *Linerboard* case, SRKW expanded upon efforts by the FTC (which had theretofore obtained a consent decree against a single defendant) and developed a case against a total of twelve defendants.  SRKW's work in that case led to settlements exceeding $200 million.

Moreover, SRKW's reputation has been recognized on numerous occasions by courts that have appointed the firm as lead counsel in major class actions.  *See, e.g.*, *In re OSB Antitrust Litig.*, Master File No. 06-CV-00826 (E.D. Pa.) ("Counsel have represented their clients with consummate skill and efficiency, … lawyers from Spector Roseman Kodroff & Willis - performed brilliantly in this exceptionally difficult case."); *In re New York City Shoes Inc. Securities Litig.*, No. 87-4677 (E.D. Pa.) ("Co-lead counsel Eugene Spector is a skilled and respected member of the bar who deftly managed this class action litigation."); *In re Blood Reagents*, 2015 WL 6123211, at *26 (E.D. Pa. Oct. 19, 2015) (opinion certifying class) ("Plaintiffs' lead counsel has extensive experience in complex antitrust class actions and has ably performed his duties as interim class counsel"); *In re Linerboard* , 2004 WL 1221350, *6 (E.D. Pa. June 2, 2004) (DuBois, J.) ("The Court has repeatedly stated that the lawyering in this case at every stage was superb ...."); *In re Relafen* (Judge Young describing the outcome as "the result of a great deal of very fine lawyering"); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D 180, 185 (D.N.J. 2003) (opinion

certifying class) ("[p]laintiffs' counsel's conduct of this case to date has led to a sophisticated and professional exposition of the issues to the Court."); *Stop & Shopp.*, No. 03-4578 (E.D. Pa. May 19, 2005) ("[h]ere, Plaintiffs' counsel are highly experienced in complex antitrust litigation, as evidenced by the attorney biographies filed with the Court . . . . They have obtained a significant settlement for the Class despite the complexity and difficulties of this case."); *In re Lupron Mktg. and Sales Practices Litig.*, 345 F. Supp. 2d 135, 137-38 (D. Mass. 2004) ("Counsel are among the most experienced lawyers the national bar has to offer in the prosecution and defense of significant class actions.").

### C.   The Firms are Prepared and Able to Commit the Required Time and Resources to this Case

The Firms have the financial resources and personnel required to litigate this case to a successful conclusion. This is demonstrated not only by their firm resumes and the work that they have already done in this case, but also by their accomplishments in prior antitrust class actions – including, as described above, matters in which they have had to investigate and develop the case from the ground up and pursue it for a decade or more.  Accordingly, "the resources that counsel will commit to representing the class" also support appointing the Firms as co-lead counsel. Rule 23(g)(1)(A)(iv).  These Firms have recovered billions of dollars for their clients, are recognized leaders in the antitrust class action field, and have a track record of successfully litigating this kind of case from beginning to end.

### D.   The Firms Will Work Cooperatively with Co-Counsel and the Court

The Firms (which have acted together with one another, as well as with other firms in this litigation, as co-lead counsel in prior antitrust class actions) have an established history of working cooperatively and collegially with one another, with other plaintiffs' firms, and with defendants' counsel.  And they would do so here to effectively litigate this case – efficiently, synergistically,

and without duplication of effort among them or other counsel – as they have, for example, as co-lead counsel in *Air Cargo* (Hausfeld and Kaplan Fox) and *Flat Glass* (all three Firms). Indeed, the Firms already have worked together in this matter to ensure that the views of all plaintiffs' counsel were considered, as expected by the Court in its June 13, 2016 Order – bringing to the Court's attention the positions and views regarding certain case organization, scheduling, and case management issues supported by a large number of plaintiffs' counsel but otherwise omitted from reports to the Court.

In short, the Firms are committed to a leadership structure guided by ethically and steadfastly pursuing the best interests of the class and achieving the best possible outcome.

## III.   Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion to appoint the Firms as co-lead counsel for the proposed class.

Dated: September 2, 2016                    Respectfully submitted,

*/s/ Robert N. Kaplan*
Robert N. Kaplan
Frederic S. Fox
Gregory K. Arenson
Donald R. Hall
Hae Sung Nam
Matthew P. McCahill
Jason A. Uris
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, New York 10022
Tel: (212) 687-1980
Fax: (212) 687-7714
Email: rkaplan@kaplanfox.com
Email: ffox@kaplanfox.com
Email: garenson@kaplanfox.com
Email: dhall@kaplanfox.com
Email: hnam@kaplanfox.com
Email: mmccahill@kaplanfox.com
Email: juris@kaplanfox.com

15

*Attorneys for Plaintiff Oklahoma Firefighters*
*Pension and Retirement System*

*/s/ Scott Martin*
Scott Martin
Irving Scher
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1195
Fax: (212) 202-4322
Email: smartin@hausfeld.com
Email: ischer@hausfeld.com

Michael D. Hausfeld
William P. Butterfield
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
Email: mhausfeld@hausfeld.com
Email: wbutterfield@hausfeld.com

Michael P. Lehmann
Bonny E. Sweeney
Christopher L. Lebsock
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
Email: mlehmann@hausfeld.com
Email: bsweeney@hausfeld.com
Email: clebsock@hausfeld.com

Gary I. Smith, Jr.
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 985-3270
Fax: (215) 985-3271
Email: gsmith@hausfeld.com

*Attorneys for Plaintiff Oklahoma Police Pension and Retirement System*

/s/ Eugene A. Spector
Eugene A. Spector
Robert M. Roseman
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
**SPECTOR ROSEMAN KODROFF & WILLIS, P.C.**
1818 Market Street
Suite 2500
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
espector@srkw-law.com
rroseman@srkw-law.com
bcaldes@srkw-law.com
jjagher@srkw-law.com
jspector@srkw-law.com

*Attorneys for Plaintiff Inter-Local Pension Fund Graphic Communications Conference of the International Brotherhood of Teamsters*

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2016, I authorized the electronic filing of the foregoing Memorandum in Support of Motion to Appoint Hausfeld LLP, Kaplan Fox & Kilsheimer LLP, and Spector Roseman Kodroff & Willis, P.C. as Co-lead Counsel for the Plaintiffs' Class with the Clerk of Court, and the electronic service of the same on all counsel of record, using the CM/ECF system.

/s/ Robert N. Kaplan
Robert N. Kaplan