UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TREASURY SECURITIES AUCTION ANTITRUST LITIGATION | MDL No. 2673<br>Case No. 15-md-02673 (PGG) |
| This Document Pertains To:<br>*ALL CASES* | ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF PLATFORM DEFENDANTS' MOTION
TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND .................................................................................................................... 3

I.    The Deficient Prior Complaint........................................................................................ 3

II.   The Amended Complaint Does Not Address the Pleading Deficiencies Identified by the Court................................................................................................................... 4

ARGUMENT.......................................................................................................................... 6

I.    Tradeweb's Lawful Acquisition of eSpeed Does Not Support the Boycott Conspiracy Claim........................................................................................................ 7

II.   The New Allegations Regarding Corporate Bonds Do Not Establish Tradeweb's Participation in the Alleged Boycott Conspiracy.................................................. 8

III.  The Unjust Enrichment Claim Fails ............................................................................... 9

IV.  The Claims Against the Platform Defendants Should Be Dismissed With Prejudice .................................................................................................................... 9

CONCLUSION..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................6

*Garber v. Legg Mason, Inc.*,
   347 F. App'x 665 (2d Cir. 2009) .......................................................................................6

*In re JP Morgan Auction Rate Sec. (ARS) Mktg. Litig.*,
   867 F. Supp. 2d 407 (S.D.N.Y. 2012)...............................................................................6

*U.S. ex rel. Ladas v. Exelis, Inc.*,
   824 F.3d 16 (2d Cir. 2016)...............................................................................................10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   27 F. Supp. 3d 447 (S.D.N.Y. 2014).................................................................................9

**Other Authorities**

Fed. R. Evid. 201 ....................................................................................................................6

Tradeweb Markets LLC, Tradeweb IDB Markets, Inc., and Dealerweb Inc. (collectively, "Tradeweb" or the "Platform Defendants") respectfully submit this memorandum in support of their motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Consolidated Class Action Complaint (the "Amended Complaint" or "AC") (ECF No. 381).[1]

## PRELIMINARY STATEMENT

The Court recently held that Plaintiffs' prior Complaint (ECF No. 226) failed "to plead an actionable antitrust claim premised on the alleged Boycott Conspiracy." (ECF No. 373, Memorandum Opinion and Order ("MTD Op."), at 34.) Plaintiffs' Amended Complaint likewise fails to state an actionable Boycott Conspiracy claim as to any Defendant and, as to Tradeweb, does not even attempt to address, much less cure, the fundamental and dispositive flaws the Court identified.

As to Tradeweb, the Amended Complaint asserts the same theory of liability, based on the same deficient allegations, that this Court previously found insufficient to state a claim for relief. The Amended Complaint, therefore, fails to state an actionable claim against Tradeweb for the same reasons as the prior Complaint. (MTD Op. at 37-38.)[2] Like the failed prior Complaint, the Amended Complaint relies on the conclusory and unsupported assertion that Dealerweb's U.S. Treasury platform, launched in 2014, is the "vessel" through which the Boycott Defendants purportedly prevented the emergence of a U.S. Treasury "all-to-all" trading platforms that would permit trading from buy-side investors. (*See, e.g.*, AC ¶¶ 25, 342, 374, 440,

---

[1]  Tradeweb joins in and adopts the arguments in the other Defendants' Joint Motion to Dismiss the Consolidated Amended Complaint ("Joint Motion") with respect to the "Boycott Conspiracy" claim (ECF No. 404 at 20-28) and sets forth herein the additional reasons why that claim is facially deficient as to the Platform Defendants. Plaintiffs do not allege any claims against the Platform Defendants with respect to the so-called "Auction Conspiracy."

[2]  The Platform Defendants expressly incorporate by reference the arguments presented in their motion to dismiss the prior Complaint. (*See* ECF Nos. 282, 284.)

471.) But, like its predecessor, the Amended Complaint does not plead *any* direct or indirect evidence that Tradeweb participated in the alleged Boycott Conspiracy, does not allege that Tradeweb "refused to deal with anyone," and fails to connect Dealerweb in any way to any alleged boycott, whether in conspiracy with other Defendants or otherwise, of any entity or any type of trading activity. (MTD Op. at 37-38.)

The sparse new allegations in the Amended Complaint concerning Tradeweb do not save the claims against it. *First*, the new threadbare allegation that Tradeweb has agreed to acquire and intends to operate eSpeed going forward (AC ¶¶ 25, 342, 374, 440, 471) fails to support a Boycott Conspiracy claim against the Platform Defendants. This allegation suffers from the same "critical pleading defect" as Plaintiffs' other allegations about Dealerweb—it does not demonstrate that "the Platform Defendants actually used Dealerweb in an anti-competitive manner or as a means to refuse to deal with any other market participants." (MTD Op. at 37-38.) Moreover, Plaintiffs fail to plead that the acquisition is a *per se* violation of the antitrust laws and, as in the dismissed prior Complaint, Plaintiffs do not even attempt to assert a rule of reason claim with respect to Dealerweb or any of the Platform Defendants. (*Id.* at 37 n.8.)

*Second*, the passing reference in the Amended Complaint to Tradeweb's "all-to-all platform in the corporate bonds market" (AC ¶ 374) does not cure Plaintiffs' failure to allege "that the Platform Defendants refused to deal with anyone" (MTD Op. at 37-38), let alone that Dealerweb denied access to its U.S. Treasury platform in conspiracy with any other Defendant. Absent such allegations, and none are pleaded, the mere fact that Tradeweb operates a corporate bond platform plainly fails to state a claim for relief.

*Third*, Plaintiffs previously abandoned their unjust enrichment claim against the Platform Defendants and this Court dismissed it accordingly. (*Id*. at 20 n.3.) That claim is nonetheless re-

pleaded in the Amended Complaint (AC ¶¶ 597-600), but Plaintiffs proffer no new allegations with respect to it. In all events, the unjust enrichment claim, which is premised on the alleged Boycott Conspiracy, fails again for the same reasons previously articulated by the Court (MTD Op. at 51-52), and because none of the Platform Defendants is alleged to have engaged in any transaction with Plaintiffs.

In sum, the handful of new allegations concerning the Platform Defendants are wholly insufficient to plausibly plead that they participated in the purported Boycott Conspiracy, and the unjust enrichment claim against them remains fundamentally deficient. The claims against the Platform Defendants should be dismissed with prejudice.

## BACKGROUND

### I. The Deficient Prior Complaint

The deficient prior Complaint alleged that the Boycott Defendants and Tradeweb "conspired to boycott electronic trading platforms . . . to prevent any new or existing platform from offering anonymous, all-to-all trading in [U.S.] Treasuries." (ECF No. 204, Compl., ¶ 268.) Plaintiffs did not plead any direct evidence that Tradeweb participated in the alleged Boycott Conspiracy. Nor did they allege that Tradeweb (which is not a dealer and does not make markets in U.S. Treasury securities on any platform in competition with the Boycott Defendants) engaged in *any* of the supposedly parallel conduct upon which they sought to infer the existence of the alleged conspiracy. (*See, e.g.*, ECF No. 282, Memo. of Law in Support of Platform Defendants' Mot. to Dismiss, at 16.) Nor did they assert that Tradeweb boycotted any other trading platform, any other market participant, or any type of trading activity involving U.S. Treasury products. In short, Plaintiffs did not allege that the Platform Defendants engaged in any unlawful restraint on competition with respect to U.S. Treasuries or any trading platform that facilitates trading of U.S. Treasuries. Instead, the *sole* basis for Plaintiffs' claim that Tradeweb

participated in the alleged Boycott Conspiracy was that its Dealerweb platform served as a theoretical "backup" if either of two incumbent platforms began to allow buy-side participation in "all-to-all" anonymous trading of U.S. Treasuries. (ECF No. 288, Pls.' Opp. to Mot. to Dismiss, at 1-2.)

The Court ruled that these allegations were "not sufficient to plead an actionable antitrust claim premised on the alleged Boycott Conspiracy" because the claim suffered from a "critical pleading defect"—the failure to "allege that the Platform Defendants actually used Dealerweb in an anti-competitive manner or as a means to refuse to deal with any other [U.S. Treasury] market participants." (MTD Op. at 34, 37-38.) Indeed, there was "no allegation that the Platform Defendants refused to deal with anyone." (*Id*. at 37 n.8.) Nor were there any allegations sufficient to show how the alleged "close corporate relationship" between the Platform Defendants and the Boycott Defendants "played a part in unlawful activity" or that "the Platform Defendants' platforms were actually used to move [U.S. Treasury] liquidity in support of the alleged Boycott Conspiracy." (*Id.* at 34-35.) The Court also held that because "the launch of Dealerweb cannot constitute a *per se* violation," Plaintiffs' allegations were instead "subject to [a] rule of reason analysis" that they failed to satisfy. (*Id.* at 37 n.8.)

**II.     The Amended Complaint Does Not Address the Pleading Deficiencies Identified by the Court**

The Amended Complaint asserts the same core theory of liability against the Platform Defendants as the prior Complaint, *i.e.*, that Tradeweb, through the launch of Dealerweb's U.S. Treasury platform, participated in a group boycott to prevent emergence of an all-to-all trading platform for U.S. Treasuries, because Dealerweb was "a vessel into which [the Boycott Defendants] can transfer their liquidity, if either BrokerTec or eSpeed crosses the line of going 'all-to-all.'" (AC ¶ 25; *see also id.* ¶¶ 340, 383, 433, 437-38.)

4

In support of that unmodified theory, the Amended Complaint does little more than repeat the allegations the Court already found insufficient to state a claim against the Platform Defendants. As in the dismissed prior Complaint, the Amended Complaint does not allege any facts showing that Dealerweb was launched in support of the alleged Boycott Conspiracy or that any member of the putative class was excluded from using Dealerweb. Nor does the Amended Complaint add any allegations to attempt to state a rule of reason claim related to Dealerweb.[3]

The Amended Complaint adds only two new allegations as to the Platform Defendants. First, Plaintiffs allege that "Tradeweb acquired NASDAQ's fixed-income electronic trading platform—formerly eSpeed—in February 2021," thereby "eliminat[ing] the danger . . . of eSpeed allowing buy-side entities onto its platform." (*Id*. ¶ 374; *see also id.* ¶¶ 25, 342, 440, 471.)

Nothing in the Amended Complaint alleges that Dealerweb, as a result of the transaction, has or will deny access to its U.S. Treasury platform to any market participant. Nor does the Amended Complaint identify any facts that even suggest that Dealerweb will be used by the Boycott Defendants in an anti-competitive manner or as a means to refuse to deal with any other U.S. Treasury market participants. Instead, the Tradeweb press release that Plaintiffs quote in the Amended Complaint makes clear that the transaction is intended to create even *more* options for the trading of U.S. Treasury securities. According to the press release:

> Upon completion of [the] transaction, Dealerweb clients will have even more flexibility in how they trade OTR [on-the-run] U.S. Treasuries, utilizing either the new CLOB [central limit order book] or Tradeweb's innovative direct streams protocol. Both protocols are expected to be operated on the same architecture, . . . providing greater choice among protocols, more connected participants and lower cost."

---

[3] For example, Plaintiffs do not plead any allegations defining any relevant product or geographic market(s) relevant to such a claim, establishing Tradeweb's market share or market power within any such market(s), or comparing the pro-competitive benefits against the potential anti-competitive harms of Dealerweb's conduct in such relevant market(s).

(Tradeweb To Acquire Nasdaq's U.S. Fixed Income Electronic Trading Platform (Feb. 2, 2021), https://www.tradeweb.com/newsroom/media-center/news-releases/tradeweb-to-acquire-nasdaqs-u.s.-fixed-income-electronic-trading-platform/, *cited in* AC ¶ 471.)  Indeed, the press release highlights that "the addition of Nasdaq's CLOB will significantly expand the number of market participants connected to Dealerweb's OTR treasuries platform, which includes primary dealers, principal trading firms, broker dealers and hedge funds." (*Id.*) [4]

Second, in passing, the Amended Complaint makes the new but wholly irrelevant allegation that Tradeweb offers "an all-to-all platform in the corporate bonds market." (AC ¶ 374.)  Again, however, Plaintiffs fail to plead any facts that connects in any way Tradeweb's corporate bond platform to the alleged Boycott Conspiracy.

## ARGUMENT

All claims against the Platform Defendants should be dismissed with prejudice because the Amended Complaint fails to cure the deficiencies this Court identified in the prior Complaint. (MTD Op. at 34-38.)  Like the failed prior Complaint, the Amended Complaint pleads no direct evidence of the alleged boycott conspiracy and includes no allegations that purport to support a rule of reason claim.  As set forth below, none of the sparse new allegations in the Amended Complaint saves Plaintiffs' claims against the Platform Defendants from dismissal.

---

[4] The Court may take judicial notice of the press release because the AC cites to and quotes from it.  Fed. R. Evid. 201; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) ("the District Court was entitled to take notice of the full contents of the published articles" quoted in the complaint); *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009) (courts "may consider matters of which judicial notice may be taken," including "press articles"); *In re JP Morgan Auction Rate Sec. (ARS) Mktg. Litig.*, 867 F. Supp. 2d 407, 413 n.1 (S.D.N.Y. 2012) (taking judicial notice of materials cited and relied on in complaint).

I.      **Tradeweb's Lawful Acquisition of eSpeed Does Not Support the Boycott Conspiracy Claim**

Plaintiffs allege that Tradeweb's participation in the alleged Boycott Conspiracy can be inferred because it has agreed to acquire the platform previously known as eSpeed. (AC ¶ 374; *see also id.* ¶¶ 25, 342, 440, 471.) But nothing about the potential acquisition shows Tradeweb's participation in the alleged Boycott Conspiracy or connects the eSpeed transaction in any way to that alleged conspiracy. Plaintiffs do not allege, for example, that Tradeweb's acquisition would prevent any class member from accessing a U.S. Treasuries platform offering or otherwise engaging in U.S. Treasuries transactions. (*See id.*)

Nor can the eSpeed transaction be tethered to the alleged Boycott Conspiracy by reason of the alleged "close corporate relationship" between Tradeweb and the Boycott Defendants. (MTD Op. at 34.) The Amended Complaint confirms as much, acknowledging that "[i]n April 2019, Tradeweb became a publicly traded company, and the equity stakes in Tradeweb held by the Dealer Defendants fell substantially." (*Id.* ¶ 113.)

Plaintiffs' naked assertion that the eSpeed transaction (which has not closed) "cemented [Tradeweb's] control" of the U.S. Treasuries market (*id.* ¶ 413) also cannot salvage their claim. For starters, Plaintiffs' new assertion is rendered facially implausible by other allegations in the Amended Complaint regarding Tradeweb's market share. (*E.g.*, *id.* ¶ 374.) Even crediting the conclusory assertion about "control," there is still a missing link: Plaintiffs do not allege facts showing that any such alleged control that Tradeweb may gain as a result of the eSpeed transaction is somehow connected to the alleged Boycott Conspiracy. If anything, the allegations regarding the eSpeed transaction, and Plaintiffs' express reliance on Tradeweb's press release announcing the transaction, speak to Tradeweb's pro-competitive, not anti-competitive, behavior. (*See id.* ¶ 471 (citing Tradeweb press release).)

7

Accordingly, there is no basis, and none is pled, upon which to assert that the acquisition is somehow a *per se* violation of the antitrust laws. And the Amended Complaint makes no attempt to challenge the acquisition under the rule of reason.[5] That alone requires dismissal of the Boycott Conspiracy claim against the Platform Defendants.[6]

## II. The New Allegations Regarding Corporate Bonds Do Not Establish Tradeweb's Participation in the Alleged Boycott Conspiracy

Plaintiffs suggest that Tradeweb is somehow involved in the alleged Boycott Conspiracy because, although Tradeweb offers "an all-to-all platform in the corporate bonds market," it has made the business decision not to offer one in the alleged U.S. Treasuries market. (AC ¶ 374.) This is beside the point—Plaintiffs allege that the corporate bonds market is a separate and distinct market from the alleged Treasuries market. Tradeweb's business decisions in one market (corporate bonds) provide no basis to infer its participation in the alleged Boycott Conspiracy in a different market (Treasuries). The new allegation regarding Tradeweb's corporate bond platform is a red herring that does nothing to state a claim against the Platform Defendants.[7]

---

[5] "Rule of reason analysis requires specific allegations . . ., including allegations . . . defining Tradeweb's product or geographic market, or, within that market, defining its market share or market power[;] . . . allegation[s] that Tradeweb had any presence, let alone power, in any market[;] . . . [and] allegations as to the pro-competitive benefits and anti-competitive harms." (MTD Op. at 37 n.8 (internal quotation marks and citation omitted).) No such allegations are sufficiently pleaded in the Amended Complaint. Indeed, the only allegation that even remotely addresses a rule of reason claim refutes it entirely, asserting that Tradeweb's and eSpeed's combined share of U.S. Treasuries order flow is less than 9%. (AC ¶ 374.)

[6] The Amended Complaint's new allegations regarding an electronic trading platform called OpenDoor, which ceased operations in January 2021, do not include, relate to, or otherwise concern Tradeweb at all and thus cannot support any claim asserted against the Platform Defendants. The OpenDoor allegations are insufficient to support the Boycott Conspiracy claim in any event, for the reasons stated in the Defendants' Joint Motion. (ECF No. 404 at 21-22.)

[7] *See* MTD Op. at 34-35, rejecting as insufficient Plaintiffs' allegations that the Boycott Defendants historically had used Tradeweb's platforms to move liquidity in unrelated markets

8

**III.     The Unjust Enrichment Claim Fails**

Although they withdrew their unjust enrichment claim against the Platform Defendants in the prior Complaint and the Court, therefore, dismissed that claim (MTD Op. at 20 n.3), Plaintiffs inexplicably re-assert it in the Amended Complaint.  The unjust enrichment claim against the Platform Defendants fails nonetheless because, as this Court previously reasoned, it depends on the existence of the alleged Boycott Conspiracy.  (*Id*. at 51.)  As set forth above, the Amended Complaint pleads no facts showing that any Platform Defendant took any action as part of the alleged group boycott.  Additionally, the unjust enrichment claim fails as to the Platform Defendants because there is no allegation that any of them directly engaged in any transaction with Plaintiffs.  (*See* AC ¶ 599 (alleging that only "Boycott Defendants improperly collected fees from" Plaintiffs through trades).)  Thus, as a matter of law, none of the Platform Defendants were unjustly enriched and the Amended Complaint fails to allege any facts to the contrary.  *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 477-78 (S.D.N.Y. 2014) (holding that plaintiff cannot assert unjust enrichment claim against defendant with which plaintiff did not directly engage in transactions).

**IV.     The Claims Against the Platform Defendants Should Be Dismissed With Prejudice**

Plaintiffs had the opportunity to cure the deficiencies that resulted in dismissal of the prior Complaint, and they failed to do so—particularly as to the Platform Defendants, about which Plaintiffs added only a handful of new but wholly insufficient allegations.  Further amendment would be futile and the time is ripe to dismiss the claims against Tradeweb with prejudice.  *See, e.g.*, *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (holding

---

because such allegations failed to demonstrate "that the Platform Defendants' platforms were actually used to move liquidity in support of the alleged Boycott Conspiracy."

that district court did not abuse discretion in dismissing claims with prejudice, given "repeated failure to cure deficiencies by amendments previously allowed").

## CONCLUSION

For the reasons stated above, all claims against the Platform Defendants should be dismissed with prejudice.

Dated:   New York, New York    MORGAN, LEWIS & BOCKIUS LLP
         June 14, 2021

*/s/ Jon R. Roellke*
Jon R. Roellke (admitted *pro hac vice*)
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel: 202-739-3000
Fax: 202-739-3001
jon.roellke@morganlewis.com

Stacey Anne Mahoney
101 Park Avenue
New York, NY 10178
Tel: 212-309-6930
Fax: 212-309-6001
stacey.mahoney@morganlewis.com

*Attorneys for Defendants Tradeweb Markets LLC, Tradeweb IDB Markets, Inc., and Dealerweb Inc.*

10