**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re TREASURY SECURITIES AUCTION ANTITRUST LITIGATION | MDL No. 2673<br>Case No. 15-md-02673 (PGG) |
| This Document Pertains To:<br>*ALL CASES* | ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM IN SUPPORT OF PLATFORM DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

The Platform Defendants[1] respectfully submit this reply memorandum in further support of their motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice the claims against them in the Amended Complaint (ECF No. 381).[2]

## PRELIMINARY STATEMENT

Plaintiffs' Omnibus Opposition ("Opposition" or "Opp.") acknowledges, as it must, that the claims against the Platform Defendants must be dismissed in the absence of alleged facts showing that they agreed with the Boycott Defendants to engage in conduct in furtherance of the alleged Boycott Conspiracy. (Opp. at 35.) The Opposition, however, identifies no direct evidence of any such agreement, and it fails to establish any basis upon which to infer one. Instead, the Opposition addresses Plaintiffs' claims against the Platform Defendants as a mere afterthought, dedicated largely to inapposite case law and void of any alleged facts sufficient to support those claims.

This Court found that the original complaint failed to allege that the Platform Defendants conducted their business "in an anti-competitive manner or as a means to refuse to deal with any other [U.S. Treasury] market participants." (MTD Opinion at 37.) The Amended Complaint does nothing to address, let alone cure, this "critical pleading defect" (*id.*), adding only the unsupported assertion that the alleged agreement can be inferred from Tradeweb's acquisition in 2021 of a U.S. Treasuries trading platform previously known as eSpeed. (*See* AC ¶¶ 25, 342,

---

[1]  Unless otherwise stated, the same abbreviations from the Memorandum of Law in Support of the Platform Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint (ECF No. 408) ("Opening Memo") are used herein.

[2]  The Platform Defendants also join in the Boycott Defendants' reply memorandum (ECF No. 406), which sets forth additional reasons why the Boycott Conspiracy claim should be dismissed as against all Defendants. Plaintiffs do not assert any claims against the Platform Defendants as to the alleged Auction Conspiracy.

440, 471.) This additional threadbare allegation does not, and cannot, salvage Plaintiffs' claims, and nothing in the Opposition demonstrates otherwise.

*First*, the Opposition fails to identify any allegations that even remotely suggest that the Platform Defendants have used, or intend to use, the eSpeed acquisition "in an anti-competitive manner or as a means to refuse to deal," much less any facts from which it could be inferred that the Platform Defendants have an agreement with the Boycott Defendants to do so. (*See* MTD Opinion at 37.) Indeed, the Amended Complaint fails to allege any facts that would establish that the eSpeed acquisition was anything other than a procompetitive and independent business decision.

*Second*, and similarly, the Opposition's conclusory assertion that the eSpeed acquisition was an act "in furtherance" of the alleged Boycott Conspiracy (Opp. at 35) is not supported by ***any*** alleged facts. The Amended Complaint, for example, does not allege facts suggesting that the Platform Defendants had anything do to with eSpeed's decline prior to its acquisition; nor does it allege any facts suggesting any agreement that the Platform Defendants purportedly entered into with the Boycott Defendants as to how the Platform Defendants would conduct their business post-acquisition. Moreover, it is fundamentally implausible for Plaintiffs to assert that the Platform Defendants "facilitate[d]" and "enable[d]" the alleged Boycott Conspiracy (Opp. at 34), which has supposedly been carried out since 2014, by acquiring eSpeed seven years later, in 2021. (*See* AC ¶¶ 111, 340, 342.)

*Third*, nothing else in the Opposition challenges this Court's prior decision on the original motion and, accordingly, there is no other factual basis upon which to plausibly infer that the Platform Defendants participated in the alleged Boycott Conspiracy. The Court should, therefore, dismiss all claims against the Platform Defendants with prejudice.

## ARGUMENT

I. **The eSpeed Acquisition Does Not Support an Inference that the Platform Defendants Agreed to Act in Support of the Alleged Boycott Conspiracy**

Plaintiffs' Opposition focuses almost entirely on their assertion that the Platform Defendants' acquisition of eSpeed supports an inference that they "agreed with the Boycott Defendants to facilitate and enable their group boycott" and "played a supporting role in furthering the boycott conspiracy." (Opp. at 34.) That conclusory assertion is untenable.

As an initial matter, the Opposition identifies no alleged facts that connect the eSpeed acquisition in any way to the purported Boycott Conspiracy. That alone requires dismissal. *See Alaska Dep't of Revenue, Treasury Div. v. Manku*, No. 20-1759-CV, 2021 WL 3027170, at *4 (2d Cir. July 19, 2021) (affirming dismissal of amended complaint because it "fail[ed] to link each of the defendants individually to specific acts of anticompetitive conduct in furtherance of the conspiracy"). Plaintiffs, for example, do not allege that the Platform Defendants had any role in eSpeed's pre-acquisition "tailspin." (Opp. at 2; AC ¶¶ 414-22.) Indeed, as this Court previously held, Plaintiffs fail to plausibly plead "that the Platform Defendants' platforms were actually used to move liquidity in support of the alleged Boycott Conspiracy." (MTD Opinion at 34-35.) Nor do Plaintiffs allege that, following the acquisition, the Platform Defendants denied or will deny access to its trading platform to any market participant. (*See id.* at 37-38 (finding that Plaintiffs failed to allege the Platform Defendants "refused to deal with anyone").) And there is nothing in the Amended Complaint that suggests in any way that the Boycott Defendants had any role in the eSpeed acquisition.[3]

---

[3] The Court rejected Plaintiffs' previous contention that a conspiracy could be inferred by reason of the "close corporate relationship" between Tradeweb and some of the Dealer Defendants. (MTD Opinion at 34-35.) Plaintiffs now claim that the "change in Tradeweb's ownership does not absolve it" (Opp. at 36), but they do not refute that it renders all the more

3

Faced with no such facts, Plaintiffs excerpt a single phrase in a Tradeweb press release concerning the acquisition—"one size does not fit all"—as the sole support for asserting that the acquisition supports an inference that Tradeweb agreed to participate in the alleged Boycott Conspiracy. (AC ¶ 471; Opp. at 36.) But far from supporting any such inference, "one size does not fit all" merely acknowledges that different clients may prefer different trading protocols. Indeed, the press release itself plainly states "the addition of Nasdaq's CLOB [to Tradeweb's direct streams protocol] will … provid[e] greater choice among protocols, more connected participants, and lower cost." (*See* AC ¶ 471 (quoting *Tradeweb To Acquire Nasdaq's U.S. Fixed Income Electronic Trading Platform* (Feb. 2, 2021); Opening Memo at 6-7.)[4]

Even Plaintiffs themselves acknowledge that they "do not allege that the Platform Defendants' *acquisition* of eSpeed, standing alone, violated the antitrust laws." (Opp. at 37-38 (emphasis added).) They claim, instead, that "it is the Platform Defendants' agreement to act in support of a *per se* unlawful group boycott that is illegal." (*Id.*) This tautology collapses under its own weight. By Plaintiffs' own admission, the acquisition was not illegal, yet it is the **sole** act upon which they purport to cure their failure to plausibly plead a Platform Defendant "agreement to act in support" of the alleged Boycott Conspiracy. There is simply no basis upon which to

---

implausible their assertion that the acquisition had anything at all to do with the alleged conspiracy.

[4] Unable to allege any facts showing "that the Platform Defendants refused to deal with anyone" (MTD Opinion at 37-38), Plaintiffs assert that the Court should ignore the entirety of the press release and simply accept as true their strained interpretation of the single phrase they quote in their Amended Complaint. (Opp. at 36 n.26.) But the law does not support such gerrymandered pleading. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007) (stating that because the complaint alleged "only part of what [defendant's CEO] reportedly said . . . the District Court was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn"). Accordingly, none of the cases upon which Plaintiffs rely to assert otherwise (Opp. at 36-37 n.26) accepted as true a plaintiff's implausible misinterpretation of a quote flatly contradicted by the very document on which it was based.

4

infer participation in an allegedly *per se* illegal conspiracy based on conduct that Plaintiffs themselves (correctly) acknowledge is lawful. *See* MTD Opinion at 34, 37-38; *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 486 (S.D.N.Y. 2017) (holding that Tradeweb's launch and operation of interest rate swaps platforms did not, as a matter of law, "give rise to an inference of participation in a conspiracy"). And, because the eSpeed acquisition "cannot constitute a *per se* violation"—just like the launch of Dealerweb's U.S. Treasury platform (MTD Opinion at 37 n.8)—Plaintiffs must satisfy the pleading requirements of a rule of reason claim, which they do not even attempt to do. (*See* Opp. at 38.)

That the claims against the Platform Defendants should be dismissed is further confirmed by the cases Plaintiffs cite concerning the circumstances under which a "vertical" market participant can be held liable for allegedly "coordinating" a conspiracy among "horizontal" competitors. (Opp. at 35.) In each of those cases, the claims against vertical market participants were based on alleged ***express agreements or written policies*** they allegedly "coordinated" and "orchestrated" as the "ringmaster" of the horizontal competitor defendants.[5] Here, in sharp contrast, Plaintiffs do not allege ***any*** express agreement or written policy, much less one the Platform Defendants entered into or "coordinated" with the Boycott Defendants related in any way to the eSpeed acquisition. Nor is there any allegation that the Platform Defendants acted as "ringmasters" or used the eSpeed transaction to "orchestrate" the alleged horizontal conspiracy.

---

[5] *See Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 932, 934 (7th Cir. 2000) (Toys "R" Us allegedly "orchestrated a horizontal agreement among its key toy suppliers" by entering into written agreements with each of them to restrict sales to retail outlets); *In re Disposable Contact Lens Antitrust Litig.*, 215 F. Supp. 3d 1272, 1298-99 (M.D. Fla. 2016) (contact lens distributor allegedly orchestrated pricing policies among lens manufacturers that prohibited eye care professionals from offering discounts on covered products); *In re Elec. Books Antitrust Litig.*, 859 F. Supp. 2d 671, 685 (S.D.N.Y. 2012) (Apple allegedly "coordinated a series of" written distribution agreements with major book publishers for the purpose of raising prices for electronic books).

Indeed, the Boycott Conspiracy allegedly began in 2014, seven years before the Platform Defendants' purported overt act of acquiring eSpeed (AC ¶¶ 111, 340, 342), making it impossible that the acquisition served to coordinate the alleged Boycott Conspiracy.

## II. There Is No Other Basis Upon Which to Infer that the Platform Defendants Agreed to Join and/or Acted in Furtherance of the Alleged Boycott Conspiracy

Like the launch of Dealerweb's U.S. Treasury platform, the eSpeed acquisition "does not constitute parallel conduct" that could support a plausible inference that the Platform Defendants participated in the alleged Boycott Conspiracy. (*See* MTD Opinion at 38.) Accordingly, Plaintiffs are left with nothing more than so-called plus factors to prop up their claims against the Platform Defendants. But as this Court has already correctly held, allegations of plus factors without any parallel conduct "do not suffice to plead an antitrust conspiracy." (*Id.* (citing *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013).)

But even if considered, the only supposed plus factor that is new to the Amended Complaint is Plaintiffs' assertion that it "defies economic theory" that Tradeweb offers "an all-to-all platform in the corporate bonds market" without offering one in the alleged U.S. Treasuries market. (Opp. at 37; AC ¶ 374.) Plaintiffs, however, allege no facts about market supply or demand, liquidity, or any other competitive dynamics in the trading of corporate bonds that, according to Plaintiffs' own allegations, takes place in an alleged market separate and distinct from the trading of U.S. Treasuries. (*E.g.*, AC ¶¶ 1-5.) Their unsupported "economic theory" is, therefore, entirely speculative and wholly immaterial to whether they state a claim against the Platform Defendants.

## III. The Unjust Enrichment Claim Fails

The Opposition asserts that Plaintiffs' unjust enrichment claims are re-pleaded in the Amended Complaint (Opp. at 39 n.30) but does not contest that Plaintiffs previously abandoned

that claim as to the Platform Defendants or that the Court properly dismissed it. Nor do Plaintiffs contest the Platform Defendants' showing that the unjust enrichment claim against them is deficient. (Opening Memo at 9.) The unjust enrichment claim should, therefore, once again be dismissed.

## CONCLUSION

For the reasons stated above and in the Platform Defendants' Opening Memo, all claims against the Platform Defendants should be dismissed with prejudice. (*See* Opening Memo at 9-10.)

| | |
|---|---|
| Dated: New York, New York<br>August 4, 2021 | MORGAN, LEWIS & BOCKIUS LLP<br><br>*/s/ Jon R. Roellke*<br>Jon R. Roellke (admitted *pro hac vice*)<br>1111 Pennsylvania Ave., NW<br>Washington, DC 20004<br>Tel: 202-739-3000<br>Fax: 202-739-3001<br>jon.roellke@morganlewis.com<br><br>Stacey Anne Mahoney<br>101 Park Avenue<br>New York, NY 10178<br>Tel: 212-309-6930<br>Fax: 212-309-6001<br>stacey.mahoney@morganlewis.com<br><br>*Attorneys for Defendants Tradeweb Markets LLC, Tradeweb IDB Markets, Inc., and Dealerweb Inc.* |