quinn emanuel
trial lawyers







November 10, 2021

**Via ECF**

The Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

*In re: Treasury Securities Auction Antitrust Litigation*, 15-md-2673 (PGG)

Dear Judge Gardephe:

We write in response to Defendants' November 4, 2021 letter (Dkt. 423), regarding the recent decision in *Litovich v. Bank of America Corp.*, 2021 WL 4952034 (S.D.N.Y. Oct. 25, 2021). Contrary to Defendants' assertions, *Litovich* does not support Defendants' pending motions to dismiss.

*Litovich* involved an alleged conspiracy among a group of banks to boycott electronic trading platforms for "odd lots" of corporate bonds. *Id*. at *2. Odd lot trades are bond trades in quantities below the standard "round lot" amount of 1,000 bonds or $1 million in par value. Odd lots are predominantly traded by individual "retail" investors, whereas round lots are traded almost exclusively by large institutional investors. *Id*. at *1. The plaintiffs alleged that the defendants conspired by refusing to participate in platforms that allowed investors to trade odd lots with greater pricing transparency. *Id.* The complaint did not set forth any direct evidence of the alleged conspiracy, but contained economic analyses showing that odd lots trade at wider bid-ask spreads than round lots. *Id*. *2. As the court put it, the case's "central theory" was that this discrepancy in bid-ask spreads has "no reasonable economic justification and can only be explained by anticompetitive behavior." *Id*. at *2. Judge Liman granted the defendants' motion to dismiss on the grounds that (1) the alleged conspiracy was not plausible and (2) the plaintiffs' claim was time-barred.[1]

There are, however, dispositive differences between *Litovich* and this case.

*First*, the *Litovich* court's conclusion that the plaintiffs engaged in improper group pleading because their allegations "refer[red] to Defendants as a collective bloc and asser[ed]

---

[1] Defendants did not move to dismiss Plaintiffs' complaint in this case on statute-of-limitations grounds.

generalized claims of parallel conduct," *id.* at 24, is not applicable to Plaintiffs' claims. Unlike in *Litovich*—where the complaint contained no witness testimony and no chat transcripts—Plaintiffs here allege *direct evidence* of an auction conspiracy in the form of eyewitness testimony from an insider to the conspiracy. Indeed, the Amended Complaint quotes extensively from a former senior UBS-affiliate executive who interfaced directly with UBS Treasury traders. This witness established that there were "typical" and "constant communications over the years" with dealers communicating with each other "ahead of each auction"—of which there were "as many as two or three [] in one week"—where they shared information about their respective "appetites" and "desires" for the specific US Treasuries to be auctioned and shared "where the desire was." AC ¶ 198. The witness also confirms that, in addition to UBS, eight other Auction Defendants used chats to coordinate auction behavior: Bank of America, Barclays, BNP Paribas, Credit Suisse, Goldman Sachs, JP Morgan, Morgan Stanley, and RBS. AC ¶ 197. The Amended Complaint lists the content of specific chats in which multiple Defendants actually engaged in such behavior. *Id.* ¶¶ 203-12, 309.

The same is true with respect to the boycott claim. Defendants argue that the court rejected the *Litovich* plaintiffs' allegations because they consisted of "generalized allegations that defendants 'pressured and threated' other market participants" and "failed to allege 'what those threats were' or that the defendants made those threats 'in parallel.'" Dkt. 423 at 3. The new allegations in the Amended Complaint, in contrast to those in the *Litovich* complaint, identify, for example, the names of specific executives at different Defendants who threatened platforms with the loss of liquidity, including the specific language used in those threats. *E.g.*, *id*. ¶¶ 399, 401, 419-20. This is not undifferentiated "group pleading"—it is detailed and specific pleading that identifies the defendants and explains what each did to further the conspiracy.

*Second*, while the *Litovich* court found that the plaintiffs' economic analyses were not alone sufficient to connect any individual Defendant to the conspiracy because they relied on average spreads among the defendant-group, *id.* at *26, that flaw was fatal to the *Litovich* plaintiffs' complaint because it was the only evidence offered. The plaintiffs did not couple their economic evidence with more traditional direct evidence of parallel conduct by specific banks. Here, Plaintiffs do not rely on statistical evidence alone to link individual Defendants to the conspiracy. Rather, the Amended Complaint connects Defendants to the conspiracies through direct evidence (eyewitness testimony and chat evidence showing their participation in the auction conspiracy) and parallel conduct (allegations regarding specific Defendants' participation in the boycott conspiracy).

More basically, the *Litovich* court rejected the plaintiffs' analyses of bid-ask spreads in the odd-lot bonds market because they were readily explained by the unusual nature of the "odd-lot" market. As the court explained, there are "obvious scale efficiencies which the round-lot purchasers enjoy," *id.* at *10, because the costs-per-transaction would be the same to dealers whether they were dealing in smaller odd-lots or larger round-lots, making the bid-ask spreads "more narrow when those costs are able to be spread over a larger lot of bonds," *id.* at *19. By contrast, here, the relevant market is not a "bespoke" market of small trades where transaction costs would naturally be expected to be significantly higher than dealer-to-dealer trades. The relevant market in this case is Treasury securities, among the deepest and most liquid securities market, with market participants that include the largest buy-side institutions.

*Third*, Judge Liman concluded that the defendants' mere decision "not to participate" in new trading platforms that might damage their profit margins did not establish an inference of conspiracy. *Id.* at *14. In this case, however, Plaintiffs do not simply allege that Defendants chose "not to participate" in all-to-all trading platforms—rather, Plaintiffs allege multiple affirmative actions taken by Defendants to block and sabotage platforms that threatened to allow buy-side entities to trade directly with each other. *See, e.g.*, AC ¶¶ 388-390 (entering into anticompetitive written agreements); 396 (sabotaging BrokerTec's joint venture with MarketAxess); 414-420, 443, 446 (moving liquidity en masse away from NASDAQ); *see also* Dkt. 411 at 25-31. In addition, the complaint in *Litovich* acknowledged that some defendants actually *supported* several platforms that allowed direct investor-to-investor trading in corporate bonds, which undercut the plaintiffs' allegations that the defendants' failure to participate in new platforms sprang from a common motive to eliminate platforms that increased pricing transparency and competition. *Id.* at *22. That is not true in this case.

For all these reasons, *Litovich* is distinguishable, and the Court should deny Defendants' motions to dismiss.

Respectfully submitted,

| | | |
|---|---|---|
| */s/ Michael B. Eisenkraft* | */s/ Gregory Asciolla* | */s/ Daniel L. Brockett* |
| Michael B. Eisenkraft | Gregory Asciolla | Daniel L. Brockett |
| **Cohen Milstein Sellers & Toll PLLC** | **Labaton Sucharow LLP** | **Quinn Emanuel Urquhart & Sullivan, LLP** |

*Interim Co-Lead Counsel for Plaintiffs*

cc: All Counsel of Record (by ECF)